CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Dwain Lammey**, | **Case No.** 2:19-cv-03924-PA-GJS |
| Plaintiff, | **Plaintiff's OSC Response re: Supplemental Jurisdiction** |
| v. | Honorable Judge Percy Anderson |
| **405 Florence, LLC,** a California Limited Liability Company; **Teresa P. Navarrete**; and Does 1-10, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ..............................................................................iii

I. THIS COURT SHOULD EXERCISE SUPPLEMENTAL
    JURISDICTION BECAUSE IT HAS ORIGINAL JURISDICTION
    OVER PLAINTIFF'S AMERICANS WITH DISABILITIES ACT
    CLAIM AND BECAUSE THE UNRUH CLAIM IS SO RELATED
    IT FORMS PART OF THE SAME CASE OR CONTROVERSY.............1

A. This Court Has Original Jurisdiction Over Plaintiff's ADA Claim...........1

B. Plaintiff's State Claim is So Related It Forms Part of the Same Case
    or Controversy.................................................................................1

II. THE UNRUH CLAIM DOES NOT RAISE A NOVEL OR COMPLEX
    ISSUE OF STATE LAW, DOES NOT PREDOMINATE OVER
    THE ADA CLAIM, AND THERE ARE NO EXCEPTIONAL
    CIRCUMSTANCES OR COMPELLING REASONS FOR
    DECLINING JURISDICTION. ...............................................................2

A. Plaintiff's State Claim Does Not Raise a Novel or Complex Issue of
    State Law. ........................................................................................3

B. Plaintiff's State Claim Does Not Substantially Predominate Over
    the ADA Claim. ...............................................................................3

C. The Supreme Court Has Stated that the Most Important
    Considerations are Factors of Economy, Convenience,
    Fairness, and Comity. Those Factors Virtually Demand
    Supplemental Jurisdiction be Exercised..........................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D. There Are No Exceptional Circumstances or Other Compelling Reasons for Declining Jurisdiction. ...................................................9

III. CALIFORNIA'S HIGH FREQUENCY LITIGANT STATUTES DO NOT JUSTIFY DISMISSAL OF PLAINTIFF'S STATE CLAIM. ..........10

IV. CALIFORNIA'S RIGHT TO IMPLEMENT AND INTERPRET ITS OWN LAW ...................................................................................12

V. CONGRESS EXPLICITLY ANTICIPATED AND AUTHORIZED STATUTES LIKE UNRUH. ....................................................13

VI. RELIEF SHOULD THIS COURT DISMISS STATE CLAIMS .................14

A. A Stay Would Best Preserve the Position of the Parties. ........................14

B. Interlocutory Appeal .................................................................15

VII. CONCLUSION ........................................................................17

Response to OSC                                      Case No. 2:19-cv-03924-PA-GJS

1

## TABLE OF AUTHORITIES

2

**Cases**

3  *Arroyo v. Kazmo,* USDC Case No. 2:19-cv-02720-PA-MRW ..................... 13, 14

4  *Arroyo v. Rosas,* 9th Cir. Case No. 19-55974. .................................................. 14

5  *Arroyo v. Unoil*, USDC Case No. 2:19-02769-PSG-JEM ........................... 13, 14

6  *Baker v. Palo Alto University, Inc.*,

7      2014 WL 631452 (N.D. Cal., 2014) ..................................................... 6

8  *Borough of W. Mifflin v. Lancaster*,

9      45 F.3d 780 (3d Cir. 1995) ................................................................. 6

10  *Crowe v. Wiltel Communication Systems*, 103 F.3d 897, 899 (9th Cir.,

11      1996). ...................................................................................................... 12

12  *Daenzer v. Wayland Ford, Inc.*,

13      193 F. Supp. 2d 1030 (W.D. Mich. 2002) ........................................ 6

14  *Delgado v. Orchard Supply Hardware Corp.*,

15      826 F. Supp.2d 1208 (E.D. Cal. 2011) ........................................... 4, 6

16  *Erie R.R. v. Tompkins, 304 U.S. 64 (1938).* ............................................. 12

17  *Graf v. Elgin, J. & E. Ry.*,

18      790 F.2d 1341 (7th Cir.1986) ........................................................... 5

19  *Gunther v. Lin*, 144 Cal.App.4th 223 (2006) ........................................ 3

20  *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142 (1991) ........... 3

21  *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1049. ...................................... 13

22  *Johnson v. Morning Star Merced, LLC*, 2018 WL 4444961, *6 (E.D. Cal.

23      2018) ..................................................................................................... 11

24  *Kohler v. Islands Restaurants, LP*, 956 F. Supp. 2d 1170, 1175 (S.D. Cal.

25      2013) ..................................................................................................... 3

26  *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011). .......4, 6, 9

27  *Kuba v. 1-A Agr. Ass'n*,

28      387 F.3d 850 (9th Cir. 2004) ............................................................. 1

*Kuba v. 1-A Agr. Ass'n,*
  387 F.3d 850 (9th Cir. 2004) ............................................... 1

*Landis v. North America Co.* (1936) 299 U.S. 248, 254. .................................... 15

*Langer v. Nguyen*, USDC Case No. 8:19-cv-00294-JLS-KES ............................... 8

*Langer v. Tashkaplyan*, USDC Case No. 2:19-cv-02278-PA-PLA ...................... 8

*Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007). ........................... 4

*Moore v. Dollar Tree Stores Inc.,* 85 F. Supp. 3d 1176, 1193 (E.D. Cal.
  2015) ......................................................................... 3, 4, 7

*Munson v. Del Taco, Inc.,* 46 Cal.4th 661 (2009) ............................................ 3

*Rosado v. Wyman,*
  397 U.S. 397 (1970) ............................................................. 5

*Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, (S.D.
  Cal. May 5, 2017) ............................................................. 4, 9

*United Mine Workers of Am. v. Gibbs,*
  383 U.S. 715 (1966) ............................................................. 5

*United States v. Woodbury*, 263 F.2d 784, 787-88 (1959, 9th Cir.) ................. 16

*Wood v. County of Alameda* (1995) 875 F.Supp. 659, 663. ............................. 13

**Statutes**

28 U.S.C § 1292 ..................................................................... 15

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1367 ................................................................ 1, 2, 10

42 U.S.C. § 12101 et seq. ..................................................... 1, 13

Cal. Civ. Code § 1542. .......................................................... 17

Cal. Civ. Code § 51(f) ........................................................... 1, 2

Cal. Civ. Code § 55.56(g)(4). ................................................. 12

Cal. Civ. Proc. Code § 425.50(a)(4) ...................................... 10

Cal. Civ. Proc. Code § 425.55(b)(1)..................................................................10

Cal. Civ. Proc. Code § 425.55(b)(2)..................................................................10

Cal. Gov. Code § 68085.35 ...............................................................................10

Cal. Gov. Code § 70616.5..................................................................................10

Fed. R. Civ. Proc. 11 ........................................................................................10

**Other Authorities**

2015 CA A.B. 1521 (NS) (September 10, 2015)...................................................13

**Rules**

General Order 56 (N.D. Cal. 2013). ..................................................................16

**I. THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION BECAUSE IT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIM AND BECAUSE THE UNRUH CLAIM IS SO RELATED IT FORMS PART OF THE SAME CASE OR CONTROVERSY.**

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[1] A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."[2]

**A. This Court Has Original Jurisdiction Over Plaintiff's ADA Claim.**

"The district courts shall have original jurisdiction of all civil actions arising under the... laws... of the United States."[3] Here, Plaintiff has filed suit under the Americans with Disabilities Act[4], a federal statute. Accordingly, the Court has original jurisdiction, as the case is a civil action arising under United States law.

**B. Plaintiff's State Claim is So Related It Forms Part of the Same Case or Controversy.**

Citing Cal. Civ. Code section 51 subsection (f), "The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act," Plaintiff claims a violation of the Unruh Act based solely on the ADA violations alleged in the Complaint. Dkt. 1.

---

[1] 28 U.S.C. § 1367(a).

[2] *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004).

[3] 28 U.S.C. § 1331.

[4] 42 U.S.C. § 12101 et seq.

Thus, the ADA and Unruh Acts are inextricably intertwined. A violation of the ADA is a per se violation of Unruh.[5] The incident that forms the basis of both claims is identical. The Parties are identical. The witnesses are identical. All the documentary evidence (photographs, measurements, bank records, policies, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability under both claims are identical. Plaintiff's counsel is not aware of a federal and state claim more intertwined than the ADA/Unruh pair.

Given the per se nature of the Unruh claim and that Plaintiff has only pled Unruh as being violated per se by the ADA violation, the claims form part of the same case or controversy.

**II. THE UNRUH CLAIM DOES NOT RAISE A NOVEL OR COMPLEX ISSUE OF STATE LAW, DOES NOT PREDOMINATE OVER THE ADA CLAIM, AND THERE ARE NO EXCEPTIONAL CIRCUMSTANCES OR COMPELLING REASONS FOR DECLINING JURISDICTION.**

The exercise of supplemental jurisdiction is mandatory, unless prohibited by section 1367(b) or one of the exceptions set forth in section 1367(c) applies. Under section 1367(c), a court may decline to exercise supplemental jurisdiction where: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

---

[5] Cal. Civ. Code § 51(f).

**A. Plaintiff's State Claim Does Not Raise a Novel or Complex Issue of State Law.**

Though some courts previously found inclusion of an Unruh Act violation in an ADA suit to present novel or complex legal issues best left to state courts, most of these cases centered on whether Unruh requires proof of intentional discrimination, a now resolved question.[6] There have been a slew of other arguments raised on this topic but all of them have been resolved or rejected by courts. To borrow the phrasing of one court, most examples "are either irrelevant or erroneous."[7] The bottom line is that "courts routinely exercise jurisdiction over supplemental claims under [Unruh], as these types of claims do not generally raise novel or complex issues of state law."[8]

**B. Plaintiff's State Claim Does Not Substantially Predominate Over the ADA Claim.**

As stated above, the incident that forms the basis of both claims is identical. The parties are identical. The witnesses are identical. All the documentary evidence (photographs, measurements, bank records, policies, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability under both claims are identical. Proving up the ADA claim is the same work and same effort as proving up the Unruh claim. As one court summarized:

> The state-law claims do not substantially predominate in terms of proof. Indeed, because the claims are mostly based on ADA violations, the proof for those claims is identical to that needed to

---

[6] See, for example, *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142 (1991) and *Gunther v. Lin*, 144 Cal.App.4th 223 (2006), both overruled by *Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2009).

[7] *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1193 (E.D. Cal. 2015) (rejecting the argument that an Unruh claim over a barrier raises a novel or complex issue of state court).

[8] *Kohler v. Islands Restaurants, LP*, 956 F. Supp. 2d 1170, 1175 (S.D. Cal. 2013) (collecting cases, including a Ninth Circuit case).

1
2
3
4
5

> prove violation of the ADA. For the state-law claims, Plaintiff need only make an additional showing of the particular "occasions" on which he encountered the barriers or was deterred from visiting the restaurant because of the barriers in order to make out his claims for statutory damages. To be sure, the availability of damages under state law means that the state-law claims present a slightly larger scope of issues and offer more comprehensive remedies. Nonetheless, the Court does not find that this causes the state-law claims to substantially predominate this litigation.

6

*Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).

7
8
9
10
11
12

Moreover, the mere fact that the Unruh claim has an additional remedy does not mean that it "substantially predominates" over the case. "Other than the availability of statutory damages under state law, the state and federal claims are identical. The burdens of proof and standards of liability are the same. Indeed, the Unruh Act specifically provides that a violation under the ADA also constitutes a violation of the Unruh Act."[9]

13
14
15
16
17
18
19
20
21
22

It is hard to reach a different conclusion on this topic. "Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed."[10] This court should not decline supplemental jurisdiction on the basis that the Unruh claim for a statutory penalty substantially predominates. It simply does not. Encountering an ADA barrier is not only the standard for an ADA violation but is also the standard for recovery of statutory damages. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000."[11]   In this case, specifically, Plaintiff only alleges 1 visit and one

23
24
25
26

[9] *Moore*, 85 F.Supp.3d at 1194 (finding that an Unruh claim for statutory damages does not substantially predominate over the federal ADA claim); see also *Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, (S.D. Cal. May 5, 2017).

27

[10] *Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011) (finding no substantial predominance).

28

[11] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

1  deterrence, based on the knowledge of the inaccessible facilities, totaling $8,000
2  in statutory penalties.

3
4  **C. The Supreme Court Has Stated that the Most Important Considerations are Factors of Economy, Convenience, Fairness, and Comity. Those Factors Virtually Demand Supplemental Jurisdiction be Exercised.**
5

6  More importantly, even substantial predominance is found, the Court is
7  required to take the next step and consider the impact of declining or exercising
8  supplemental jurisdiction: the "justification" underlying the decision whether to
9  maintain supplemental jurisdiction or dismiss claims, "lies in considerations of
10  judicial economy, convenience and fairness to litigants..."[12] In fact, the Courts
11  have recognized that judicial economy is the "*essential policy* behind the modern
12  doctrine of pendent jurisdiction..."[13]   As the Supreme Court noted: the
13  "commonsense policy of pendent jurisdiction" is "the conservation of judicial
14  energy and the avoidance of multiplicity of litigation."[14]

15  Here, if this Court were to decline to exercise supplemental jurisdiction
16  over the state claim, it would result in the plaintiff pursuing the Unruh claim in
17  state court while, simultaneously, prosecuting his ADA claim in federal court.
18  Given that the plaintiff's state claim is predicated upon a finding that the ADA
19  has been violated, this means that almost identical cases would be prosecuted in
20  two different forums.

21  As one Court presiding over an ADA/Unruh case recently noted, "Forcing
22  these parties to litigate two nearly-identical cases in separate venues—one here

23
24
25
26
27  [12] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).
28  [13] *Graf v. Elgin, J. & E. Ry.,* 790 F.2d 1341, 1347–48 (7th Cir.1986).
[14] *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).

1    and one in state court—is neither convenient, economical, nor fair."[15] Likewise,

2    the *Delgado* court reasoned:

3        Here, the claims arise from a common nucleus of operative facts.
         Both the federal and state law claims are based upon architectural
4        barriers which infringe upon the accessibility to the OSH Store.
         Accordingly, this Court has supplemental jurisdiction over the
5        state law claims. The Court will exercise supplemental jurisdiction
         over the state law claims. Here, the state issues are not unsettled or
6        novel and complex. Plaintiff's state and federal law claim involve
         the identical nucleus of operative facts, and require a very similar,
7        if not identical, showing in order to succeed. If this court forced
         plaintiff to pursue his state law claims in state court, the result
8        would be two highly duplicative trials, constituting an unnecessary
         expenditure of plaintiff's, defendant's, and the two courts'
9        resources. As a practical matter, plaintiff's state law claims for
         damages may be the driving force behind this action. To rule as
10       OSH proposes, however, would effectively preclude a district court
         from ever asserting supplemental jurisdiction over a state law
11       claim under the Unruh Act.

12   *Delgado,* 826 F. Supp. at 1221.

13

14       The *Kohler* case presents a lengthy analysis of the issue and concluded

15   that fairness favored keeping the Unruh claim in federal court "rather than in a

16   separate, and largely redundant, state-court suit."[16] Another court held that

17   supplemental jurisdiction should be exercised where "declining jurisdiction

18   would simply require twice the expenditure of resources as to the evidentiary

19   determinations."[17] Another framing of the analysis states that supplemental

20   jurisdiction should be exercised to avoid "two parallel proceedings, one in

21   federal court and one in the state system."[18] Here, the principles of judicial

22   economy and fairness militates toward keeping Unruh.

23   _____

24   [15] *Baker v. Palo Alto University, Inc.*, 2014 WL 631452, *2 (N.D. Cal.,

25       2014).

26   [16] *Kohler*, 794 F. Supp. 2d at 1096.

27   [17] *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich.

28       2002).

     [18] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).

In fact, in *Gibbs*, the Court noted that *even in circumstances where the federal claim has been lost*, the Court may want to maintain supplemental jurisdiction where the state claim is so closely intertwined with the federal claims: "There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."[19]

Although some courts have declined supplemental jurisdiction under a "substantial predominance" standard, those decisions are scattered and cannot withstand serious scrutiny. But, more importantly, those other decisions never address the factors that the Supreme Court have said are essential, namely economy, convenience, fairness, and comity. As the *Moore* court stated, those decisions, "failed to address how declining jurisdiction served these the values of economy, convenience, fairness, and comity."[20]  It is hard to argue with the Moore court's conclusion that: "the Court's exercise of supplemental jurisdiction would best advance economy, convenience, fairness, and comity. The state and federal claims are so intertwined that it makes little sense to decline supplemental jurisdiction. To do so would create the danger of multiple suits, courts rushing to judgment, increased litigation costs, and wasted judicial resources."[21]

This is not just a calendar clearing exercise that the court is considering. Were the Court to deny federal jurisdiction to Plaintiff's state claims, Plaintiff would have to litigate these claims in parallel in state court, or abandon the right to file well-pleaded and meritorious claims in federal court entirely. Plaintiff's state claim is predicated on adjudication of the federal claim, over which this Court has original jurisdiction. This puts Plaintiff's claims in a complicated

---

[19] *Gibbs*, 383 U.S. at 727.

[20] *Moore*, 85 F.Supp.3d at 1194.

[21] *Id.*

1  position, as the state court claim cannot reasonably be resolved without final
2  resolution of the federal case, or risk inconsistent decisions on identical facts.

3        Further, judges across the Central District have issued identical orders to
4  show cause in dozens of other cases (at last tally, Plaintiff's counsel has identified
5  five district court judges issuing more than 110 identical or similar orders to
6  show cause, and more have come in since the last count). Notably, these orders
7  issued irrespective of the posture of the case; *orders have issued even in cases in*
8  *which a notice of settlement or application for default judgment has been filed.*[22] This
9  is a question of law that unquestionably affects the outcome of litigation in this
10  district, not just in this case, but potentially every single other ADA claim filed
11  that also alleges violations of state law. However, the flood of orders issued,
12  particularly in cases on the brink of resolution, demonstrates the impact of the
13  Court declining supplemental jurisdiction. Instead of these more than 110 cases
14  taking up one judge's docket, declining supplemental jurisdiction would result in
15  further clogging of the state court, while the very same case runs parallel in
16  federal court. Cases in which a judgment was all but obtained would be required
17  to be refiled in state court unnecessarily. Defendants would have to fight
18  allegations of the same facts on two fronts, often duplicating their attorney fees
19  and costs. And the federal courts would still have original jurisdiction over the
20  ADA claims. There is no universe in which declining supplemental jurisdiction
21  promotes judicial economy, convenience, or fairness to the litigants. As one court
22  recently noted: "the Court finds the opposite and concludes that declining
23  supplemental jurisdiction in the present matter would be an unnecessary

24
25
26  _____

27  [22] See *Langer v. Nguyen*, USDC Case No. 8:19-cv-00294-JLS-KES and
28        *Langer v. Tashkaplyan*, USDC Case No. 2:19-cv-02278-PA-PLA ,
        for example.

1   expenditure of the Plaintiff, Defendants, and the state and federal courts'
2   resources."[23]

3
4
### D. There Are No Exceptional Circumstances or Other Compelling Reasons for Declining Jurisdiction.

5        As noted, five central district judges have issued more than 110 OSCs on
6   this topic. While most have not identified any specific rationale in their orders
7   identifying exceptional circumstances or compelling reasons for declining
8   jurisdiction, some courts have been more expansive in their OSCs and cited
9   heavily to California state law procedures and noted that plaintiffs seem to be
10  forum shopping to avoid state court requirements. But a litigant choosing from
11  two proper jurisdictions is not inappropriate forum shopping, is not
12  "exceptional," and does not provide a compelling reason to decline to exercise
13  supplemental jurisdiction. As one court explained:

> [T]he fact that Plaintiff is "forum shopping" by filing suit in this
> Court rather than state court does not constitute a "compelling
> reason" for declining jurisdiction. There is no reason why Plaintiff
> should have to file his claims in state court instead. "This sort of
> forum-shopping is commonplace among plaintiffs and removing
> defendants alike and is not an 'exceptional' circumstance giving
> rise to compelling reasons for declining jurisdiction, as required
> by section 1367(c)(4)." *Chavez*, 2005 WL 3477848, at *2. The
> fact that Plaintiff and his counsel frequently file suits asserting
> disability rights violations does not change this conclusion. The
> Ninth Circuit has acknowledged that "[f]or the ADA to yield its
> promise of equal access for the disabled, it may indeed be
> necessary and desirable for committed individuals to bring serial
> litigation advancing the time when public accommodations will be
> compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500
> F.3d 1047, 1062 (9th Cir.2007). Nothing bars Plaintiff from
> frequently invoking a federal forum to remedy ADA violations.

*Kohler*, 794 F.Supp.2d at 1096; see also *Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, *5 (S.D. Cal. May 5, 2017) (adopting the same rationale).

---

[23] *Schoors*, 2017 WL 1807954, at *5.

Response to OSC                                      Case No. 2:19-cv-03924-PA-GJS

### III. CALIFORNIA'S HIGH FREQUENCY LITIGANT STATUTES DO NOT JUSTIFY DISMISSAL OF PLAINTIFF'S STATE CLAIM.

California's "high-frequency litigant" statutes do not give reason under the § 1367(c) exceptions to decline supplemental jurisdiction. "High-frequency litigants" are defined by section 425.55 of the California Code of Civil Procedure as "A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation"[24] or "An attorney who has represented... 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing of the current complaint..."[25] Undoubtedly, many of plaintiff's counsel's clients fall within this definition, although plaintiff's counsel himself does not (as explained in the attached declaration).

However, this means little to the prosecution of a case. There are only three consequences in state court litigation for a plaintiff being identified as a high-frequency litigant. First, such plaintiffs must add some specific facts in their complaint and verify the complaint certifying that it comports with... the exact language of Fed. R. Civ. Proc. 11.[26] But those "facts" are either required under Federal Rule 26's initial disclosure requirement or readily available in discovery. Additionally, plaintiff's counsel is already subject to Rule 11 in federal court. Second, there is an additional $1,000 filing fee,[27] which is divided into the general fund and the trial court trust fund.[28] This fee serves to relieve workload

---

[24] Cal. Civ. Proc. Code § 425.55(b)(1).

[25] Cal. Civ. Proc. Code § 425.55(b)(2).

[26] Cal. Civ. Proc. Code § 425.50(a)(4).

[27] Cal. Gov. Code § 70616.5.

[28] Cal. Gov. Code § 68085.35.

1    to the trial courts.[29] Ironically, though, the workload of the trial courts would be

2    massively increased if this Court were to decline supplemental jurisdiction.

3    Finally, there are stay and early evaluation procedures in state court for these

4    cases. But those same procedures—almost identical in nature—are available in

5    the Central District with the ADA Disability Access Litigation program and use

6    of ADR Form 20. A defendant can request and a court can sua sponte order the

7    parties to participate in this process.

8         In any event, there is nothing unique in the state court procedures that are

9    not replicated in some fashion in the federal system. It is not the federal court's

10   task to decide that it likes state court *procedures* better and to force a plaintiff to

11   take his case to state court because of that preference. That is not a compelling

12   reason. In summary, as one court stated about the most prolific ADA plaintiff on

13   the planet:

14        Litigants in federal court routinely bring both federal and state law
          causes of action, and the federal courts routinely resolve all such
15        claims. There is nothing improper about Johnson, or any other
          litigant, following this well established and commonly used
16        practice. The Court acknowledges that California has established
          a heightened pleading standard for high frequency litigants. As
17        such, considerations of comity favor permitting California courts
          to follow, interpret, and enforce California pleading standards.
18        However, as explained in *Schoors* and *Johnson*, it is not efficient,
          convenient, or fair to require Johnson to file two nearly identical
19        cases involve materially identical proof and issues.  It is judicially
          more economical for a single court to resolve the dispute between
20        Johnson and MSM, instead of requiring duplicative efforts in
          multiple courts, possibly involving multiple juries, and possibly
21        leading to inconsistent results. Finally, even if Johnson is forum
          shopping, the Court continues to find that such forum shopping is
22        not sufficient to justify declining supplemental jurisdiction.

23   *Johnson v. Morning Star Merced, LLC*, 2018 WL 4444961, *6 (E.D. Cal. 2018)
     (citations omitted for readability).

24

25

26

27

28

———————————

[29] 2015 CA A.B. 1521 (NS) (September 10, 2015).

### IV. CALIFORNIA'S RIGHT TO IMPLEMENT AND INTERPRET ITS OWN LAW

Every first year law student has the principles of *Erie* drilled into them in their first semester: In federal question cases, federal courts apply federal law to both substantive and procedural matters while claims under supplemental jurisdiction federal courts applies state law to substantive issues, and federal law to procedural issues.[30] Presumably the California legislature is well acquainted with these principles as well, as it has deftly amended Unruh with a variety of modifications that bind the federal court as to substantive application of law, while creating limited procedural changes. California did not seek to prevent litigants from filing cases, it sought to prevent abusive litigation, and it was successful. In the exact same law that created the heightened pleading requirements and fees the legislature substantively expanded protections for small businesses by providing immunity to damages for proactive business owners and expanding existing protections.[31] It also declined to create barriers to filing complaints based on meritorious claims. It seems quite paternalistic to state that California is being denied the opportunity to dictate the litigation of its own laws, when California is well aware how to craft legislation that would influence the enforcement of its laws in federal court: it has done so multiple times this decade! Despite this, the Court has decided to selectively interpret *Erie,* which directs the court to disregard state procedures, as creating a reverse preclusion on federal courts by allowing state court procedure to justify declining to enforce state claims in federal court. Federal courts are not intended to give deference to state procedural issues, so declining jurisdiction on the basis of procedure is a truly extraordinary justification, and certainly not a rationale that was imagined by *Gibbs*.

---

[30] *Crowe v. Wiltel Communication Systems*, 103 F.3d 897, 899 (9th Cir. 1996).

[31] Cal. Civ. Code § 55.56(g)(4).

## V. CONGRESS EXPLICITLY ANTICIPATED AND AUTHORIZED STATUTES LIKE UNRUH.

In orders issued in *Arroyo v. Kazmo* and *Arroyo v. Unoil*[32] on the same day [the first of dozens of orders to show cause re: supplemental jurisdiction issued on all pending Unruh claims in several courts], it was suggested that filing the damages claims under state law is counter to the intent of the US Congress that did not authorize damages for violations of the ADA, suggesting that the Court acts under Congressional mandate by "restoring the balance Congress struck when it enacted the ADA." While it is factually true that Congress did not provide damages under the ADA, it is false that this is something that was against, or unexpected by Congress. In passing the ADA, Congress explicitly invited augmenting legislation from the states. "Nothing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any… law of any State… that provides greater or equal protection for the rights of individuals with disability than are afforded by this Act."[33] [34] The House Judiciary Committee even explicitly discussed California's expanded remedies and confirmed that the ADA as a whole should be read to preserve individuals' rights to decide whether to "sue under the state law as well, or instead."[35] And further "the purpose of the ADA is to "maximize the options available to plaintiffs."[36] What this Court fashions as defending the intent of Congress it accomplishes by acting counter to it and discriminating against those with disabilities in limiting their choice of

---

[32] *Kazmo* and *Unoil* orders attached as Exhibits 1 and 2.

[33] *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1049.

[34] 42 U.S.C. § 12201 (b).

[35] *Jankey v. Lee* at 1050 citing H.R.Rep. No. 101–485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S.Code Cong. & Admin. News, p. 493.

[36] *Wood v. County of Alameda* (1995) 875 F.Supp. 659, 663.

forums.[37] ADA plaintiffs unquestionably properly file their claims in federal court, and those state claims that share the same facts are properly filed alongside them. The suggestion that they are not precluded from litigating them together if they choose state court binds their choices in a discriminatory way. Neither the civil procedure of the state of California, nor feelings of animus towards the case load[38] of meritorious ADA and Unruh claims justifies the extraordinary act of denying access to the federal court system of properly pleaded causes of actions.

## VI. RELIEF SHOULD THIS COURT DISMISS STATE CLAIMS

Should the court maintain jurisdiction, no relief is required. However, should this court decline jurisdiction on the state claims, Plaintiff requests the court either stay that order and the case pending resolution of the appeal in *Arroyo v. Rosas,* or in the alternative certify this matter for immediate appeal.

### A. A Stay Would Best Preserve the Position of the Parties.

Should this Court be inclined to decline jurisdiction over the related state claim, Plaintiff asks that the Court stay this matter pending resolution of the appeal filed in *Arroyo v. Rosas.*[39] In that matter, the District Court dismissed the state claims declining jurisdiction after granting summary judgment on the federal claims. The rationale for the dismissal appears to mirror the rationale used in the various OSCs issued throughout this District.

---

[37] This is worth more than a footnote, but this is an important issue as many state courtrooms and aging state courthouses themselves struggle with accessibility.

[38] *Kazmo* and *Unoil* pages 5 and 7.

[39] 9th Cir. Case No. 19-55974.

1   The Court's power to stay proceedings is inherent in its power to control

2   its docket.[40] In deciding the propriety of a stay, the Court should confirm the

3   issues in the two cases are the same and should analyze whether the non-moving

4   party can be protected from prejudice.[41] Both of these factors are met here.

5   Should this matter not be stayed and the state claims dismissed, this matter will

6   proceed to be litigated in two different forums with great duplication of expenses,

7   with any resolution on the merits destined for review by the 9th Circuit. A stay will

8   allow the defendants to make any remediation of the claimed barriers during the

9   period of the stay and would not prevent attempts to resolve the claim. This

10  would not prejudice the defendants in any way, as any resolution of this matter

11  would be predicated on resolution of this issue surrounding supplemental

12  jurisdiction. Issuing a stay best preserves the rights and resources of the parties.

**B. Interlocutory Appeal**

In the alternative, if the Court does not issue a stay and still decides to dismiss, Plaintiff requests that this Court certify this matter for interlocutory appeal pursuant to 28 U.S.C § 1292. This is proper here as this order would invoke a controlling question of law, there is a substantial difference of opinion on this issue, and an immediate appeal would materially advance ultimate termination of this litigation.[42]

---

[40] *Landis v. North America Co.* (1936) 299 U.S. 248, 254.
[41] *Id.* at 254.
[42] 28 U.S.C § 1292.

*1. The Decision Involves a Controlling Question of Law.*

All that must be shown in order for a question to be a "controlling question of law" is that resolution of the issue on appeal could affect the outcome of litigation in the district court.[43] It is well settled that the issue need not be dispositive of the lawsuit in order to be controlling.[44]

Resolution of this issue on appeal would unquestionably affect the outcome of litigation in this district, not just in this case, but potentially every single other ADA claim filed that also alleges violations of state law. (By at least one court's estimate, 24% of the total civil litigation filed in this district in 2019.)

*2. The Order is based on a Finding on which there is Substantial Difference of Opinion.*

The question of whether a court should retain jurisdiction over parallel state claims is highly varied in the various federal courts in the state of California, as was cited in numerous cases above. The Northern District of California has created an entire program for the handling of ADA claims that explicitly anticipates inclusion of state claims. (See: General Order 56). The Eastern District has resolved thousands of cases with similar posture, while frequently declining to dismiss state claims even when federal claims have been resolved. Within this district itself, there is a difference of opinion, where some judges have chosen to retain jurisdiction when the propriety of supplemental jurisdiction has been questioned, and others, as suggested by the OSC here, have dismissed the claims entirely without consideration of the merits of the federal claims.

Supplemental Jurisdiction contains multiple caveats that allow for discretion, however no discretion is unfettered. Appellate review of this decision will enable other courts to decide whether or not to follow this procedure, an important issue given the quantity of the cases affected.

---

[43] *United States v. Woodbury*, 263 F.2d 784, 787-88 (1959, 9th Cir.).

[44] *Id.*

*3. Immediate Review will Materially Advance Termination of This and Other Litigation.*

The vast majority of civil litigation is settled between the parties. The entire calculus of reaching a settlement is to resolve the claims between the parties to allow for the control of risk. The California legislature has sought to facilitate this by defining the scope of waiver that is permissible in a settlement agreement via the 1542 waiver. The parties in this matter cannot resolve this matter in its entirety if a dismissal order of the state claim is issued by this Court, due to the uncertainty that it creates. At minimum, an additional lawsuit will be filed in state court, meaning that the parties will only be able reach a full resolution of claims if the dismissed claims are considered as part of the settlement.

This district requires that the parties engage in mandatory ADR during litigation. It is unclear how the parties could meaningfully discuss settlement that would put to rest the claims between the parties given the ambiguity concerning the state of the plaintiff's state claims. Immediate review if a dismissal issues will allow the parties to more efficiently resolve this claim.

## VII. CONCLUSION

The plaintiff respectfully requests this Court to continue to exercise supplemental jurisdiction over the Unruh Civil Rights Act claim. Dismissing the state claim would result in a refiling of the state claim in state court, with additional filing fees not only for plaintiff but also for the defendants (each of which would have to file a first appearance fee) and if the case did not settle: discovery in both forums, case management and scheduling conference appearances in both forums, dispositive and other motions in both forums, mandatory settlement conferences in both forums, and trial in both forums – all of which involve the same parties, witnesses, factual claims, property, evidence, and presentation. This would offend the notions of fairness, judicial economy,

and convenience that are the cornerstone of the analysis about supplemental jurisdiction.

Further, if the Court is inclined to dismiss Plaintiff's state claim, Plaintiff requests an immediate stay pending appeal of *Arroyo v. Rosas* or, in the alternative, Plaintiff requests the Court certify the matter for interlocutory appeal.

Dated: August 21, 2019                    CENTER FOR DISABILITY ACCESS

By: /s/ Russell C. Handy
Russell C. Handy
Attorneys for Plaintiff

Response to OSC                                               Case No. 2:19-cv-03924-PA-GJS